ECF CASE
JUDGE ROBINSON

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
**J & J SPORTS PRODUCTIONS, INC.,**
as Broadcast Licensee of the **May 6, 2006**
**DELAHOYA/MAYORGA** Program,
                            Plaintiff,

            -against-

ANA LUCIA BAQUERO and CARLOS
EDUARDO ASITIMBAY, Individually and as
officers, directors, shareholders and/or principals of
EL TORERO REST., INC. d/b/a EL TORERO
RESTAURANT a/k/a EL TORERO SPORTS BAR,

and

EL TORERO REST., INC. d/b/a EL TORERO
RESTAURANT a/k/a EL TORERO SPORTS BAR
                           Defendants.
-----------------------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW**

Civil Action No. 07-CV-11392-SCR-GAY
HON. STEPHEN C. ROBINSON

      Plaintiff submits the following in support of its request for an award of damages against

the Defendants, ANA LUCIA BAQUERO and CARLOS EDUARDO ASITIMBAY,

Individually and as officers, directors, shareholders and/or principals of EL TORERO REST.,

INC. d/b/a EL TORERO RESTAURANT a/k/a EL TORERO SPORTS BAR, and EL TORERO

REST., INC. d/b/a EL TORERO RESTAURANT a/k/a EL TORERO SPORTS BAR.

## FACTS

      The relevant facts can be briefly stated and are fully set forth in the accompanying

exhibits and Plaintiff's underlying Complaint.  Plaintiff, J & J Sports Productions, Inc.,

commenced  this action on December 19, 2007, alleging that the Defendants hereto knowingly

and willfully violated the Communications Act of 1934, as amended, 47 U.S.C. §605 (1996).

The Complaint, ECF document  No. 1,  alleges that the Defendants, unlawfully intercepted and exhibited the DeLaHoya/Mayorga pay-per-view boxing event on May 6, 2006 ( hereafter the "Program").

As part of its factual research, Plaintiff's Counsel conducted a search of the New York State Division of Alcoholic Beverage Control, State Liquor Authority. The results show that Ana Lucia Baquero and Carlos Eduardo Asttimbay are  Principal of El Torero Rest Inc., trade name El Torero Restaurant. The Public Query results page is attached to the Attorney Affidavit as Exhibit "B".

Copies of the Summons and Complaint were served on Defendants ANA LUCIA BAQUERO and CARLOS EDUARDO ASITIMBAY, Individually and as officers, directors, shareholders and/or principals of EL TORERO REST., INC. d/b/a EL TORERO RESTAURANT a/k/a EL TORERO SPORTS BAR, and EL TORERO REST., INC. d/b/a EL TORERO RESTAURANT a/k/a EL TORERO SPORTS BAR, as set forth in the proofs of service which were filed with the Court on February 20, 2007 and February 21, 2008,  ECF document Nos. 3, 4 and 5.

As the Complaint and the Affidavit of Plaintiff's President, Joseph Gagliardi, submitted simultaneously both reveal, Plaintiff owns the distribution rights to the May 6, 2006 program, which was broadcast either by closed circuit television or by encrypted satellite signal.  For a fee, commercial establishments could legitimately receive an unscrambled signal, enabling them to view the program by contracting with the Plaintiff.   However, through the use of methods that required the performance of some deliberate and willful act, potential purchasers, such as the Defendants herein, illegally obtained programs without paying the Plaintiff for the rights to exhibit said event.

In order to combat the serious erosion of market sales caused by such piracy, Plaintiff

hired investigative agencies to retain independent auditors to visit various locales in the New

York City area on the night of May 6, 2006, to see whether these establishments were

intercepting and publicly displaying the Program without authorization from, or payment to,

Plaintiff and its affiliates.

The auditors visited numerous locations where the Program was exhibited.  Among the

locations the auditors observed exhibiting the DeLaHoya/Mayorga match without authority to do

so was that of the Defendants, El Torero Restaurant.  Defendants' display of the event was

verified by independent auditor Edgardo Rodriguez attached to the Plaintiff's Affidavit as

Exhibit C.  The auditor entered the Defendant establishment without paying a cover charge and

saw one television sets exhibiting a portion the encrypted broadcast to approximately 50

individuals in an establishment with an estimated capacity of 100.  The exhibition most likely led

to an increased number of patrons and, thus, an increase in profits, all to the financial detriment

of Plaintiff and its legitimate customers.

After proper service, the Defendants herein did not answer or otherwise appear in a

timely manner, nor did they request an extension of time to file.  Said Defendants are not infants

or incompetents.  Upon information and belief, the Defendants are not presently in the military

service of the United States.

## NATURE OF DEFAULT

Defendants' default must be deemed an admission of the facts alleged in the complaint.

Greyhound Exhibitgroup v. E.L.U.L. Realty Group, 973 F.2d 155 (2nd Cir. 1992).  Plaintiff's

complaint establishes the elements of liability required to state a claim under both 47 U.S.C. 553

and 47 U.S.C. 605.  Under 553(a)(1) liability exists if a person intercepts or receives or assists in

receiving any communication service over a cable system without authorization.  Under 605(a)

liability hinges on the interception of radio communications and its divulgence to any person.

Defendants herein, by their default, have admitted that, without authorization from Plaintiff, they illegally intercepted the scrambled transmissions of the Program. Defendants have also admitted that knowingly and wilfully intercepting the programming, and offering it to patrons of the establishment for private financial gain or commercial advantage.

Plaintiff, by contract, was granted the right to distribute the Program scheduled for May 6, 2006, via closed circuit television. Pursuant to the aforesaid contract, Plaintiff entered into subsequent agreements with various entities in the State of New York, allowing them to publicly exhibit the program to their patrons. Plaintiff expended substantial monies in consideration of the aforementioned agreement to transmit the said boxing match to those entities within the State of New York who had contracted for same with the Plaintiff for exhibition to their patrons.

The Defendants and their agents, servants, workmen or employees, with full knowledge that said closed circuit program was not to be received and/or exhibited by entities unauthorized to do so, did, at the time of its transmission, exhibit the closed circuit program at their principal place of business willfully, and for purposes of direct or indirect commercial advantage or private financial gain and with the intent of willfully defrauding Plaintiff of revenue.

The event in question originated via a satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. Under <u>Cablevision v. Sykes</u>, 75 F.3d 123 (2nd Cir. 1996) piracy of a signal originating this way is a violation of 605(a). Because Plaintiff distributed the event via closed circuit cable television, piracy of their signal is also a violation of 553(a)(1). <u>Cablevision v. Sykes</u>, 997 F.2d 998 (2nd Cir. 1993). There are multiple illegal methods of accessing programing. Splicing an additional coaxial cable line or redirecting a wireless signal, from an adjacent residence and onto a business establishment, commercial misuse of cable or satellite by registering same as a residence when it is in fact, a business or taking a lawfully obtained box or satellite receiver from a private residence and into a

business. All these methods could permit Defendants to access programming unlawfully. [1] While

Plaintiff is unable to determine  the manner in which Defendants obtained the programing, it is

logical to conclude that Defendants must have either used an illegal satellite receiver,

misrepresented their business establishment as a residence or engaged in "mirroring" by taking a

legitimate receiver from their home to their business establishment in order to  intercept

Plaintiff's broadcast. This establishes Defendant's liability under both 553 and 605.

Entertainment by J&J v. Mama Zee, 2002 U.S. Dist. LEXIS 13686 (E.D.N.Y.).

      After trial Judge Chin of the Southern District of New York stated the following:

>   Some courts considering similar facts have imposed damages
> based on a fixed amount per patron. See, e.g., *Garden City Boxing
> Club, Inc. v. Salcedo, 2005 U.S. Dist. LEXIS 26478, No. 04 Civ.
> 5027, 2005 WL 2898233 ( S.D.N.Y. Nov. 3, 2005)* ($300.00 per
> patron); *Time Warner Cable v. Goodies Luncheonette, Inc., 77 F.
> Supp. 2d 485 (S.D.N.Y 1999)* ($50.00 per patron). Others have
> awarded a flat sum. See, e.g., *Garden City Boxing Club, Inc. v.
> Guzman, 2005 U. S. Dist. LEXIS 7954, No. 03 Civ. 8776, 2005 WL
> 1153728 (S.D.N.Y Apr. 26, 2005 )*($5,000.00); *Kingvision Pay-
> Per-View, ltd. v. New Paradise Rest., 2000 U. S. Dist. LEXIS 8792,
> No. 99 Civ. 10020, 2000 WL 378053 (S.D.N.Y. Apr. 11, 2000)* (
> $20,000). On motions for entry of default in cases involving this
> plaintiff and this fight I have awarded statutory damages of
> $5,000.00 for a violation of *Section 605 (e)(3)(C)(i)(II)* and an
> additional $5,000.00 for violations that were willful and for
> commercial gain. See, e.g. Garden City Boxing Club v. Rosa, No.
> 05 Civ. 6233 (DC); Garden City Boxing Club v. Ruiz, 05-Civ.
> 3408 (DC).
>       Here, the commercial rights for the de la Hoya/Hopkins
> fight would have cost Luischia approximately $2,000.00. In
> addition, I find that, more likely than not, one of the reasons
> defendants exhibited the fight was to realize increased profits from
> the sale of food and beverages, which profits should be disgorged.
> Finally, plaintiff is entitled to an enhancement of damages due to
> my finding that the defendants' conduct was willful and for

---

[1] In addition, emerging technologies, such as broadband or internet broadcast as well as " slingbox" technology, which allows a consumer to literally sling programming from their personal home cable or satellite systems and into their computers, can allow commercial misuse of residential broadcasting feeds through the internet from anywhere in the world.

commercial gain, although I am mindful that defendants run a
small business, their profit from exhibition of the fight was likely
minimal, and, although the amount of damages should be an
adequate deterrent, the violation is not so serious as to warrant
putting the restaurant out of business. Accordingly, I find that an
award of an additional $10,000.00 ( for a total of $12,000.00) is
fair and just, in light of all the circumstances.

See Garden City Boxing Club, Inc., v. Luis Polanco and Luischia Restaurant Corp., 2006 U. S.

Dist. LEXIS 5010 at *15-*17 (S.D.N.Y. February 7, 2006).

When a Defendant is liable under both sections of the Federal Communications Act,

Plaintiff can recover under only one section. Time Warner v. Taco Rapido, 988 F. Supp. 107

(E.D.N.Y. 1997). Plaintiff elects to recover under 605(a). A claimant who has established

liability under 605(a) may elect between actual or statutory damages under 605(e)(3)(C)(i).

Plaintiff elects for statutory damages pursuant to 605(e)(3)(C)(i)(II). Under 605(e)(3)(C)(ii)

enhanced damages are available where the violation was willful and was committed for direct or

indirect commercial advantage or private financial gain. As the Defendants exhibited the event in

a commercial establishment, Plaintiff has pleaded the elements to establish a willful violation.

Entertainment by J&J v. Mama Zee, 2002 U.S. Dist. LEXIS 13686 (E.D.N.Y.).

Congress, in its legislative wisdom, has decreed that substantial monetary damages be

available as a deterrent to future unlawful behavior. Each decision to violate the law is a

financial one. A Defendant who believes he can violate the law with impunity and never pay for

his misdeeds, will continue to do so. Rampant piracy of events like the one in question will

continue until Defendants realize it is just too expensive to keep stealing. As long as Defendants

can attract patrons by exhibiting these events, and the cost of doing so is low, they will continue

to be pirates. While   Plaintiff has not submitted evidence of the exhibition of other events in this

establishment,  for most defendants, once the technology or plan is in place to pirate these events,

they do so again and again. The Defendants' willful refusal to respond to the lawsuit hampers

the Plaintiff in demonstrating how the event was stolen and how many additional events have

been stolen in a similar manner. Defendants should not benefit from their refusal to participate

in this lawsuit.

## DAMAGES

Pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II), Defendants are indebted to Plaintiff for the

unlawful exhibition for commercial advantage of the closed circuit television signal of the

**DeLaHoya/Mayorga** boxing Event on May 6, 2006,  in the sum of up to $10,000.00 in the

discretion of the Court.

In addition, pursuant to 47 U.S.C. §605(e)(3)(C)(ii) Plaintiff is entitled to an additional

statutory damage amount of up to $100,000.00 in the discretion of the Court  for the intentional

unlawful interception of the closed circuit television signal of the **DeLaHoya/Mayorga** boxing

event on May 6, 2006. Enhanced damages under this provision were awarded in the Southern

District of New York  in Kingvision v. Ruiz, 2005 U.S. Dist. LEXIS 3856 (S.D.N.Y.) and

Garden City v. Guzman, 2005 U.S. Dist. LEXIS 7954 (S.D.N.Y.) and Cablevision v. Faschitti,

1996. U.S. Dist. LEXIS 1212 (S.D.N.Y.), as well as Kingvision v. Mi Palenque, 04-cv-6566.

The Court in Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc., 219 F. Supp. 2d

769, 2002 U.S. Dist. LEXIS 16247 (S.D. Tx. 2002), noted that deterrence is one of the goals of

47 U.S.C. §605 and that to require the offending establishment to pay the price it would have

paid had it legally contracted to exhibit the event "would do nothing to accomplish this objective

of the statute." Id. at 776.  The Court further addressed willfulness in its opinion, awarding

enhanced damages:

> Based on the limited methods of intercepting closed circuit
> broadcasting of pay-per-view events and the low probability
> that a commercial establishment could intercept such a
> broadcast merely by chance, however, courts have held conduct

> such as that of [defendant] in this case to be willful and for the
> purposes of direct or indirect commercial advantage or private
> financial gain.

Id. at 776 (citations omitted).  The Court noted that "willfulness has been defined by the Supreme

Court as 'disregard for the governing statute and an indifference for its requirements.'"

Cablevision Sys. N.Y. City Corp. v. Lokshin, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting

Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 126, 83 L. Ed. 2d 523, 105 S. Ct. 613 at

613027 (1985)).

The Southern District of New York has held that "Signals do not descramble

spontaneously, nor do television sets connect themselves to cable distributions systems."  Time

Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485 (S.D.N.Y.

1999).

Plaintiff urges that the maximum amount of statutory damages under 605(e)(3)(C)(i)(II),

$10,000.00 be awarded in this case.  Plaintiff further urges that substantial enhanced damages be

added to it pursuant to 605(e)(3)(C)(ii) of up to $100,000.00.   In deference to Plaintiff Counsel's

obligation to zealously represent its client, the prayer below includes a prayer for the full

statutory amount available to the Plaintiff.

## VICARIOUS LIABILITY

It is well settled that vicarious liability, such as that sought in this instance, turns on

whether he who is being held vicariously liable possesses the right and ability to supervise the

infringing activities at issue, and whether he has a direct financial stake in those activities.

Actual supervision of the infringing activity is not required, merely the right and ability to

supervise is all that is required.  See, Gershwin Publishing Corp. v. Columbia Artists

Management, Inc., 443 F.2d 1159 (2d Cir. 1971), citing Shapiro, Berstein & Co. v. H.L. Green

Company, 316 F.2d 304, 307 (2d Cir. 1963); Warner Brothers, Inc., v. Lobster Pot, Inc., 582 F.

Supp. 478, 483 (N.D. Ohio 1984).

Likewise, in Stumm v. Drive Entm't, Inc., No. 00-CV-4676, 2002 WL 5589 at *5 (S.D.N.Y. Jan. 2, 2002) (citations omitted), the Court opined that a corporate officer "'who has the ability to supervise [the intercepting] activity and has a financial interest in that activity, or who personally participated in that activity, is personally liable for the [interception].'" Therefore ANA LUCIA BAQUERO and CARLOS EDUARDO ASITIMBAY, Individually and as officers, directors, shareholders and/or principals of EL TORERO REST., INC. d/b/a EL TORERO RESTAURANT a/k/a EL TORERO SPORTS BAR, and EL TORERO REST., INC. d/b/a EL TORERO RESTAURANT a/k/a EL TORERO SPORTS BAR, had supervisory control over the infringing activities and a financial stake in the business. As a result, they are vicariously liable for the infringing activities. Based upon this, we respectfully submit to the Court that it is proper to continue this matter against him individually and in his capacity within the corporation.

## FEES AND COSTS

The Federal Communications Act provides that full costs, including attorney fees shall be awarded to an aggrieved party who prevails. J & J Sports Productions, is an aggrieved party in this case because it had a proprietary interest in the intercepted communications. Garden City Boxing Club v. Ayisah, 2004 U.S. Dist. 7687 (S.D.N.Y.) Plaintiff has expended filing fees, service of process costs, attorney fees, pursuing this case. Garden City Boxing Club v. Guzman, 2005 U.S.Dist. LEXIS 7954 (S.D.N.Y.), Kingvision v. Medrano, 2004 U.S. Dist. LEXIS 13282 (S.D.N.Y.), Kingvision v. Recio, 2003 U.S. Dist. LEXIS 10440 (S.D.N.Y.), Time Warner Cable v. Evans, 2001 U.S. Dist. LEXIS 16402(S.D.N.Y.), Joe Hand Productions v. West, 2000 U.S. Dist. LEXIS 15711 (W.D.N.Y.), Main Event v. Batista, 1999 U.S. Dist. LEXIS 2250, 1998 U.S. Dist. LEXIS 21492 (E.D.N.Y.).

**CONCLUSION**

Plaintiff is entitled to a default judgment against Defendants holding them liable for a sum, in the discretion of the court of <u>up to</u> the sum $110,000.00 for violation of 605(a). Plaintiff is also entitled to full litigation costs including attorney fees, and post-judgment interest. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, there is no just reason for delay in these default judgments as the interest of justice require the issuance of judgment as requested without further delay. The judgments requested herein are for a sum certain within the discretion of this court so no inquest is necessary. Plaintiff prays that this Motion be heard on submission.

**WHEREFORE,** your deponent respectfully requests that this Court in its discretion grant judgment by default under 605(a) on COUNT I of the Plaintiff's complaint against the Defendants as follows:

**Against, ANA LUCIA BAQUERO, Individually and as officers, directors, shareholders and/or principals of EL TORERO REST., INC. d/b/a EL TORERO RESTAURANT a/k/a EL TORERO SPORTS BAR,**

1) under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, of <u>up to</u> TEN THOUSAND DOLLARS ($10,000.00)

2) and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3) and under 605(e)(3)(B)(iii) *in the discretion of the Court*, costs and Attorney fees of FIVE HUNDRED TWENTY NINE DOLLARS AND SIXTEEN CENTS ($529.16)

**Against, CARLOS EDUARDO ASITIMBAY, Individually and as officers, directors, shareholders and/or principals of EL TORERO REST., INC. d/b/a EL TORERO RESTAURANT a/k/a EL TORERO SPORTS BAR,**

1) under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, of <u>up to</u> TEN THOUSAND DOLLARS ($10,000.00)

2)     and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3)     and under 605(e)(3)(B)(iii) *in the discretion of the Court*, costs and Attorney fees of FIVE HUNDRED TWENTY NINE DOLLARS AND SIXTEEN CENTS ($529.16)

**Against, EL TORERO REST., INC. d/b/a EL TORERO RESTAURANT a/k/a EL TORERO SPORTS BAR**

1)     under 605(e)(3)(C)(i)(II) a sum *in the discretion of the Court*, of <u>up to</u> TEN THOUSAND DOLLARS ($10,000.00)

2)     and under 605(e)(3)(C)(ii) a sum *in the discretion of the Court*, of <u>up to</u> ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for enhanced damages for Defendant's willful violation of 605(a)

3)     and under 605(e)(3)(B)(iii) *in the discretion of the Court*, costs and Attorney fees of FIVE HUNDRED TWENTY NINE DOLLARS AND SIXTEEN CENTS ($529.16)

Dated: March 11, 2008
     Ellenville, NY 12428            <u>/s/  Julie Cohen Lonstein</u>
                                      Julie Cohen Lonstein, Esq.
                                      Bar Roll No. JL8512
                                      Lonstein Law Office, P.C.
                                      Attorneys for Plaintiff
                                      1 Terrace Hill; PO Box 351
                                      Ellenville, NY 12428
                                      Telephone:  845-647-8500
                                      Fax: 845-647-6277

ECF CASE
JUDGE ROBINSON

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
**J & J SPORTS PRODUCTIONS, INC.,**
as Broadcast Licensee of the **May 6, 2006**
**DELAHOYA/MAYORGA** Program,
                                        Plaintiff,

      -against-

ANA LUCIA BAQUERO and CARLOS
EDUARDO ASITIMBAY, Individually and as
officers, directors, shareholders and/or principals of
EL TORERO REST., INC. d/b/a EL TORERO
RESTAURANT a/k/a EL TORERO SPORTS BAR,

and

EL TORERO REST., INC. d/b/a EL TORERO
RESTAURANT a/k/a EL TORERO SPORTS BAR
                                        Defendants.
------------------------------------------------------------

**RULE 54(b) STATEMENT**
Civil Action No. 07-CV-11392-SCR-GAY
HON. STEPHEN C. ROBINSON

      Plaintiff, J & J Sports Productions, Inc., as and for its Statement pursuant to Rule 54(b) of

the Federal Rules of Civil Procedure hereby states as follows:

      There is no just reason for delay in this Default Judgment as the interest of justice require

the issuance of judgment as requested without further delay, as the defaulting Defendants are the

only remaining Defendants in this case.

Dated: March 11, 2008
     Ellenville, NY  12428

      LONSTEIN LAW OFFICE, P.C.

      By:   /s/Julie Cohen Lonstein
          Julie Cohen Lonstein
          Bar Roll No.  JL8521
          Attorney for Plaintiff
          1 Terrace Hill; PO Box 351
          Ellenville, NY 12428
          Telephone:  845-647-8500
          Facsimile:  845-647-6277

ECF CASE
JUDGE ROBINSON

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------
**J & J SPORTS PRODUCTIONS, INC.,**
as Broadcast Licensee of the **May 6, 2006**
**DELAHOYA/MAYORGA** Program,
                                        Plaintiff,

                                                        **STATEMENT FOR JUDGMENT**
     -against-                                          Civil Action No. 07-CV-11392-SCR-GAY
                                                        HON. STEPHEN C. ROBINSON

ANA LUCIA BAQUERO and CARLOS
EDUARDO ASITIMBAY, Individually and as
officers, directors, shareholders and/or principals of
EL TORERO REST., INC. d/b/a EL TORERO
RESTAURANT a/k/a EL TORERO SPORTS BAR,

and

EL TORERO REST., INC. d/b/a EL TORERO
RESTAURANT a/k/a EL TORERO SPORTS BAR
                    Defendants
--------------------------------------------------------------
**Principal Amount**.................................................................................$    110,000.00

**Costs:**
        Filing Fees (per Defendant).........................................................$        116.66

        Process Server (per Defendant)...................................................$        100.00

        Attorney's Fee (per Defendant)...................................................$        312.50

**TOTAL (Per Defendant)**.................................................................**$  110, 529.16**

        ***BETWEEN $10, 000 - $110, 000 IN THE DISCRETION OF THE COURT***

                                        LONSTEIN LAW OFFICE, P.C.

                                        By:  /s/  Julie Cohen Lonstein
                                                Julie Cohen Lonstein
                                                Bar Roll No. JL8521
                                                Attorney for Plaintiff
                                                1 Terrace Hill; PO Box 351
                                                Ellenville, NY 12428
                                                Telephone:  845-647-8500
                                                Facsimile:  845-647-6277